# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:09cv435

| | |
|---|---|
| QBE SPECIALTY INSURANCE COMPANY, ) ) ) Plaintiff, ) ) Vs. ) ) FSI, INC., ) ) Defendant. ) ) | MEMORANDUM OF DECISION |

**THIS MATTER** is before the court on plaintiff's Motion for Judgement on the Pleadings (#9) and Motion for Summary Judgment (#16). In this action, plaintiff seeks declaratory relief on a Commercial Lines Policy of Insurance it issued to defendant, finding that it is not obligated to pay for a loss, provide a defense, or indemnify defendant against any potential claim as to the theft of cargo entrusted to defendant and stored on its premises occurring on or about July 12, 2009. Complaint, ¶ 1. Defendant has counterclaimed for coverage, provision of a defense, and indemnification against the loss.

## FINDINGS AND CONCLUSIONS

**I.      Background**

FSI provides intermodal storage for loaded and empty intermodal shipping containers. Frye Deposition (#13-1, p. 11). FSI maintains separate facilities for storage of empty containers; repair and maintenance of equipment; a trucking division; and a warehouse division. Id., at pp. 11, 13-14. In 2008, FSI sought to obtain insurance for all of its business operations. Id., at  p. 28.  FSI had previously used the Watson Insurance Agency to assist with its insurance needs. Id.   In 2008, FSI

-1-

changed insurance brokers and began working with Benton & Parker Company, Inc., and broker Andy Newson. Id., at p. 29. FSI contends that it requested insurance coverage for containers and their contents while stored within FSI's yard. (#13-5, p. 128). See also Complaint & Counterclaim. FSI's container yard is a "holding ground" for cargo. FSI, as consignee, has liability for the containers and their contents notwithstanding the fact FSI never appears on the Bill of Lading for the containers. (#13-9).

Defendant contends that the "property of others" coverage at issue in this action was discussed by Benton & Parker and Deep South (plaintiff's agent) in the final days before the insurance proposal was submitted to FSI. (#13-9).

On or about August 27, 2008, Benton & Parker provided FSI with a Written Proposal for Insurance. (#13-7). The written proposal referred to coverage for "property of others" through plaintiff with a $200,000.00 limit. Thereafter, in the Comparison Highlights of the proposal, the same coverage was referred to as "cargo/property of others coverage". Id. The Proposal did not mention or reference "property of others in the open" coverage.

On or about September 10, 2008, plaintiff issued a Commercial Lines Policy of Insurance to FSI (Policy Number QSIGA000 1039). (#1-1). Thereafter, an agent for QBE visited the premises of FSI to review their security measures and operations. Tim Frye discussed the containers and their contents with QBE's agent. (#13-1, pp. 31-32). QBE thereafter continued to accept premium payments from FSI. (# 13-6).

On or about July 12, 2009, thieves broke into FSI's premises and stole an intermodal shipping container filled with 1,920 computer monitors. (#s 1; 13-3, p. 84; 13-4, p. 109). The cargo in the container was never recovered while the container was found. (#s 1 & 5). FSI made a claim against QBE for coverage under the policy for the theft of the container's contents. (#s 1; 5; 13-4,

pp. 123-24; 15-4).

## II. Discussion

The issue is whether the commercial property coverage provision of the Commercial Lines Policy extends coverage for the loss of cargo stored on FSI's premises. Plaintiff contends that it is entitled to summary judgment and that the court should declare the theft of the contents of a shipping container to not be covered by the policy as such property was "not in the open."

The Legal Liability Coverage Form, on which the applicable coverage provision is written, provides as follows:

> we will pay those sums that you become legally obligated to pay as damages because of direct physical loss or damage, including loss of use, to Covered Property caused by accident and arising out of any Covered Cause of Loss.

(#1-1, p. 35, paragraph A). In turn, "Covered Property" is defined in the Legal Liability Coverage Form as "tangible properly of others in your care, custody or control that is described in the Declarations or on the Legal Liability Coverage Schedule." (#1-1, p. 35, paragraph A.1). Reference is made to "personal property of others in the open" on the Commercial Property Coverage Declarations page. (# 1-1, p.7). "Personal property of others in the open" is also listed under the description of property on the Legal Liability Coverage Schedule. (#1-1, p. 34).

Plaintiff's key argument is that cargo contained inside the shipping containers stored on the grounds of defendant's property is not covered because it was not "in the open." It contends that it was not in the open because it was inside shipping containers. The parties are in agreement that there are no North Carolina cases dealing with the phrase "in the open," and the only relevant cases cited by plaintiff deal with "in the open" in the context of exclusions.

Defendant points out in response that "in the open" in this policy are words of "inclusion," and terms of inclusion must be broadly read in North Carolina in favor of coverage. Exclusions,

conditions, and limitations contained in an insurance policy will be strictly construed so as to provide coverage. Wachovia Bank & Trust Co. v. Westchester Fire Ins. Co., 276 N.C. 348, 355 (1970). Defendant has also argued that parol evidence is allowable as to the intent of the parties to cover this particular loss. The general rule in North Carolina is that when a written instrument is introduced into evidence, its terms may not be contradicted by parol or extrinsic evidence and it is presumed that all prior negotiations are merged into the written instrument. Root v. Allstate Ins. Co., 272 N.C. 580, 587 (1968). The North Carolina Supreme Court held in Root, as follows:

> when the terms of a written contract or instrument are susceptible to more than one interpretation, or an ambiguity arises, or the intent or object of the instrument cannot be ascertained from the language employed therein, parol or extrinsic evidence may be introduced to show what was in the minds of the parties at the time of the making of the contract, or execution of the instrument and to determine the object for or on which it was designed to be operate.

Id. Defendant has also pointed to an email exchange between its agent, Mr. Newson, and plaintiff's underwriter, Ms. Thayer Corker. Defendant contends that if these emails were admissible, they would show that coverage for cargo or contents of the containers was contemplated. Plaintiff points out that the emails have not been presented in an admissible form and that the alleged writers of such emails have not been deposed. The Court of Appeals for the Fourth Circuit has consistently held that "[t]o be admissible at summary judgment stage, documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e)." Orsi v. Kirkwood, 999 F.2d 86, 92 (4th Cir. 1993)(citation and corresponding quotation marks omitted).

Following the reasoning of root, parol evidence is only admissible when the terms of the contract of insurance are susceptible to more than one interpretation, or an ambiguity arises, or the intent or object of the instrument cannot be ascertained from the language employed by the parties. Root v. Allstate Ins. Co., 272 N.C. at 587. In this case, the only policy term at issue is the phrase

"in the open," which must be given its ordinary meaning and significance. E. L. Scott Roofing Co. V. State, 82 N.C.App. 216, 223 (1986). Because the term "open" is not defined in the policy, it must be given its ordinary meaning.

The Merriam-Webster Dictionary defines the term "open" in relevant parts as " having no enclosing or confining barrier: accessible on all or nearly all sides" and also as " completely free from concealment:exposed to general view or knowledge."[1] Such definition is also consistent with the definitions found in the case law cited by plaintiff. See Velvet Ice Cream, Inc. v. Wausau Is. Cos., 698 F.Supp. 128, 131 (S.D.Ohio 1988); Victory Peach Group, Inc. V. Greater New York Mut. Ins. Co., 301 N.J.Super. 82, 88 (1998); Twenhafel v. State Auto Property and Cas. Ins., 2008 WL 5100938 (S.D.Ill. 2008),[2] aff'd in part and vacated in part on other grounds, 581 F.3d 625 (7th Cir. 2009).

When the phrase "in the open" is applied to the undisputed facts in this case, it is readily apparent that the policy of insurance provides no coverage, duty to defend, or to provide indemnification for this particular loss. Defendant has admitted that the stolen cargo was locked inside a large intermodal shipping container, which was locked, sealed, and weather-tight. (#5, ¶ 20). Thus, the goods were contained in an "enclosing or confining barrier" and inaccessible "on all sides." Further, the goods were completely sealed and not "exposed to general view or knowledge." See Merriam-Webster Dictionary, supra.

Finally, the court has reviewed defendant's prior policy of insurance, which indisputably

---

[1] See http://www.merriam-webster.com/dictionary/open.

[2] Due to the limits of Electronic Case Filing, a copy of such unpublished decision is placed in the electronic docket through incorporation of the Westlaw citation.

provided coverage for cargo contained in the stored containers. (#15, ¶ 24). The language of the previous policy (as well as the amount of coverage and the premium paid for such coverage), when compared with the policy issued in this mater, is indicative of provision of substantially less coverage. It is undisputed that despite plaintiff's agent's request for a copy of defendant's prior policy, the defendant's agent did not provide that policy to plaintiff's agent (#15, at ¶¶ 7-8). Further, the defendant's agent accepted the policy which clearly did not provide defendant with the coverage it contends it sought. (#15, ¶ 11).

The court has reviewed the pleadings and evidentiary material before it in light of Rule 56(a), Federal Rules of Civil Procedure, which provides:

> A party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

Fed.R.Civ.P. 56(a). The rule goes on to provide procedures for plaintiff to use in responding to a Motion for Summary Judgment:

> **(c) Procedures.**
> (**1**) **Supporting Factual Positions.** A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> **(2) Objection That a Fact Is Not Supported by Admissible**

> **Evidence.** A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>
> **(3) Materials Not Cited.** The court need consider only the cited materials, but it may consider other materials in the record.
>
> **(4) Affidavits or Declarations.** An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed.R.Civ.P. 56(c). On a motion for summary judgment, the moving party has the burden of production to show that there are no genuine issues for trial. Upon the moving party's meeting that burden, the non-moving party has the burden of persuasion to establish that there is a genuine issue for trial.

> When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. In the language of the Rule, the nonmoving [sic] party must come forward with "specific facts showing that there is a *genuine issue for trial*." Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine issue for trial."

Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted; emphasis in the original) (quoting Fed. R. Civ. P. 56). There must be more than just a factual dispute; the fact in question must be material and readily identifiable by the substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).

By reviewing substantive law, the court may determine what matters constitute material facts. Anderson, supra. "Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." Id. at 248. A dispute about a material fact is "genuine" only if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." Id. The court must credit factual disputes in favor of the party resisting

summary judgment and draw inferences favorable to that party if the inferences are reasonable, however improbable they may seem. Cole v. Cole, 633 F.2d 1083, 1092 (4th Cir. 1980). Affidavits filed in support of a Motion for Summary Judgment are to be used to determine whether issues of fact exist, not to decide the issues themselves. United States ex rel. Jones v. Rundle, 453 F.2d 147 (3d Cir. 1971). When resolution of issues of fact depends upon a determination of credibility, summary judgment is improper. Davis v. Zahradnick, 600 F.2d 458 (4th Cir. 1979). In determining whether a genuine issue of material fact exists, the admissible evidence of the non-moving party must be believed and all justifiable inferences must be drawn in his or her favor. Anderson, supra, at 255. In the end, the question posed by a summary judgment motion is whether the evidence "is so one-sided that one party must prevail as a matter of law." Id., at 252.

### III. Conclusion

After careful consideration of the pleadings, filings, and the oral arguments of the parties on April 29, 2011, and having considered the term "in the open" in a broad manner, the court concludes that no genuine issues of fact remain for trial and that plaintiff is entitled to the summary judgment it seeks. Clearly, the loss sustained by defendant on July 12, 2009, is not covered by the policy of insurance as the cargo or contents of a locked and sealed intermodal containers are not "in the open." Inasmuch as coverage is not available for such a loss, plaintiff is not obligated to indemnify defendant for its loss and or to provide defendant with a defense under the policy against any potential claims.

A Judgment is filed simultaneously herewith, providing that defendant's counterclaim is dismissed, summary judgment is granted in favor of plaintiff and against defendant, and that declaratory judgment is entered providing the relief sought in plaintiff's Complaint.

Signed: May 2, 2011

Max O. Cogburn Jr.
United States District Judge